*Croswell,* 45 Ohio St., 543, 15 N. E., 866; *Armstrong* v. *Kattenhorn,* 11 Ohio, 265; *Wineburgh* v. *Toledo Corporation,* 125 Ohio St., 219, 181 N. E., 20, and cases cited.

The judgment of the Court of Common Pleas, affirming the judgment of the Municipal Court, is affirmed.

*Judgment affirmed.*

Ross, P. J., and MATTHEWS, J., concur.

KOONTZ, APPELLANT, *v.* KELLER, ADMX., APPELLEE.
(TWO CASES.)

(Decided May 26, 1936.)

*Messrs. Randolph & Johnson,* for appellant.
*Messrs. Fitzgibbon & Fitzgibbon,* for appellee.

MONTGOMERY, J. In each of these cases the appeal was perfected to this court by the plaintiff in the Common Pleas Court from the action of that court in sustaining a general demurrer to the petition and rendering final judgment, the plaintiff not desiring to plead further after the sustaining of the demurrer.

In case No. 1845, the petition filed by Alverda Koontz avers that on a certain date defendant's decedent, one Walter B. Robertson, came to the home of the plaintiff and in an outbuilding on said property did wilfully, intentionally and maliciously assault and strike one Jennie Della Crotinger, the sister of the plaintiff, beating her to death; that the blow, so struck by the said Robertson, greatly disfigured said Jennie Della Crotinger, and that the body of the murdered woman was left in plain view and was seen by the plaintiff as she went to and fro between said building and her dwellinghouse. That, unaware of the acts of said Robertson, the plaintiff came upon the body of her sister, in the condition described, causing her great terror and shock so that her nervous system gave way and she suffered great mental and physical pain, as the result of which her health was impaired. The petition further averred the presentation to the administratrix of a claim and its rejection.

The petition filed by H. W. Koontz in the case now No. 1844 in this court, contained two causes of action based upon the same act of the said Walter B. Robertson. One cause of action was for the loss of services by Koontz of his wife, Alverda Koontz, the result of her fright and shock, described in her petition, and for medical and other expenses incurred by him on her behalf, as the result of said shock.

The other cause of action in the H. W. Koontz petition averred that, as the result of the act of said Robertson, large numbers of people had come to his home at all times of the day to view the place of the assault, to his annoyance and disturbance and that of

his family, and that by reason thereof his property had been damaged.

This petition of H. W. Koontz also averred the presentation to the administratrix of the claim and its rejection.

In the Alverda Koontz case the administratrix defends the sustaining of the demurrer to the petition on the authority of the case of *Miller* v. *B. & O. S. W. Rd. Co.*, 78 Ohio St., 309, 85 N. E., 499, the purport of which decision is that no liability exists for acts of negligence causing fright or shock, unaccompanied by contemporaneous physical injury, even though subsequent illness results. This holding is in accordance with the general rule in negligence cases. However, it is to be noted that in the *Miller case* the negligent acts complained of were neither wilful nor malicious, and the court in its opinion takes care to point out that the petition does not allege intentional or wilful negligence on the part of the defendant.

The Supreme Court in the case of *Cincinnati Northern Traction Co.* v. *Rosnagle,* 84 Ohio St., 310, 95 N. E., 884, distinguishes the case of *Miller* v. *Railroad Co., supra,* and concerning its conclusion makes the following observation on page 318 of the opinion, to-wit:

"Such a rule is salutary and necessary in negligence cases. But the reasons for the rule do not apply in cases where the act complained of is not only wrongful but intentional and wilful."

Counsel for appellant cite a number of authorities in addition to the *Rosnagle case,* wherein damages may be recovered which ensue as the result of fright or shock, where the act was wilful, intentional or malicious, and they stress particularly the decision of this court in the case of *M. J. Rose Co.* v. *Lowery,* 33 Ohio App., 488, 169 N. E., 716. In that case the complaint was that the holder of a chattel mortgage on household goods had broken and entered the plaintiff's dwelling-house and removed furniture, and that the act was wil-

ful, intentional and wanton. In that case this court held that the buyer "was also entitled to compensatory damages for the humiliation, injury to feelings, and mental suffering which she sustained, resulting naturally and necessarily from the wrongful act."

It is to be observed, however, that in this *Lowery case,* as well as in the other cases relied upon by the appellant, the unlawful act complained of was directed to the person or to the property of the plaintiff seeking damages in the particular instance. They are to be distinguished from the case at bar. Here we have a situation of a plaintiff seeking to recover damages claimed to have been sustained as the result of fright and shock due to an unlawful act committed against the person of another. Counsel have cited no Ohio authority, and we have found none, directly in point.

In the case of *King* v. *City of Shelby,* 40 Ohio App., 195, 178 N. E., 22, this court affirmed a judgment of the trial court denying damages to the plaintiff in that action for mental anguish on account of the removal of his mother's body upon the abandonment of a cemetery. To some extent that situation is parallel to the instant one, although, of course, far less gruesome and horrifying. One's feeling over the ruthless disinterring and removal of the body of one's mother would be one of shock similar in kind, though not in degree, to the feeling that would be experienced over viewing the body of a murdered sister.

Courts outside of Ohio in many instancs have laid down the rule, which seems to us sound and salutary, that one cannot recover for mental suffering resulting from the suffering of another. Watson in his work "Damages for Personal Injuries," says at page 512, "There can be no recovery for such mental suffering as merely results from sympathy for another's mental or physical pain, the right of action in such cases being restricted to the person who has directly sustained the injury."

Attention is directed to the case of *Hyatt* v. *Adams,* 16 Mich., 180, which was an action brought by a husband for malpractice against a physician for causing death of the plaintiff's wife after much suffering on her part, and that court held that the husband could not recover for his own distress due to pain suffered by his wife. In the course of its opinion this Michigan court said: "If the plaintiff has a right to sustain an action for his distress of mind on account of his wife's suffering, upon what principle can the law refuse a like action in behalf of the father, mother, brother or sister of the deceased, who may have sustained as much mental agony on the same account as the husband?" That court discusses the possible extension of such claims to numerous other relatives and friends, and propounds this query: "If the principle be once admitted, who shall prescribe its limits, and can any limits be prescribed which would not be purely arbitrary?" This query is answered in that case in the following language: "These considerations show the propriety and good sense of the rule which restricts the right of action for mental suffering to the person who has received the physical injury."

Attention is directed also to the case of *Pullman Palace Car Co.* v. *Trimble,* 8 Tex. Civ. App., 335, 28 S. W., 96. In that case a woman and a small child, her nephew, being in a sleeping car, were carried past their place of destination, the train being then stopped, the boy was put off by the porter, but, before the aunt could alight, the train was again started and she was carried some distance before being allowed to alight. It was there held that her damages should be confined to what she suffered on her own account, and that she would not be allowed to recover for her mental anguish due to fright and distress of the child who was with her.

In the course of the opinion the Texas court said: "We think the complaining party must be restricted to

the mental anguish which emanates from the wrong done himself, and not extended to that which he may experience in contemplating the sufferings of others who may be injured at the same time, however near to him they may be. Were the rule otherwise, each passenger in a railroad wreck might claim the right to recover, not only for the distress of mind which arose from his own injuries, but also for that which he sustained from contemplating the mangled condition of his fellow passengers. And even one who sustained no physical injury himself might be allowed to recover a large verdict for the anguish he endured while witnessing the bleeding forms of his companions and relatives, and listening to their heart-rending cries.''

To the same effect is the decision of the Texas Supreme Court in the case of *Gulf-Colorado & Sante Fe Ry. Co. v. Overton,* 101 Tex., 583, 110 S. W., 736, wherein it was held that one accompanying her invalid sister on a railroad train cannot recover damages for mental suffering due to the physical suffering of the invalid because of wrongful acts of the carrier.

In another Texas case, that of *Wells-Fargo & Co.* v. *Fuller,* 4 Tex. Civ. App., 213, 23 S. W., 412, damages for mental suffering of a mother caused by breach of contract of an express company to ship the corpse of her child were denied.

In the case of *Wyman* v. *Leavitt,* 71 Me., 227, 36 Am. Rep., 303, the plaintiff was denied a right to recover for alleged mental anxiety sustained by him with reference to his own safety and that of his family in an action for injury to real estate by blasting.

In the case of *Fillebrown* v. *Hoar,* 124 Mass., 580, a lessee brought an action for damages for the illegal eviction of himself and his family by his lessor, and that court held that he might recover for his own mental injury, but not for mental suffering due to the consequent illness of members of the family.

In 8 Ruling Case Law, 515, Section 73, this pro-

nouncement is made: "In the law, mental anguish is restricted, as a rule, to such mental pain or suffering as arises from an injury or wrong to the person himself, as distinguished from that form of mental suffering which is the accompaniment of sympathy or sorrow for another's suffering, or which arises from a contemplation of wrongs committed on the person of another." See also Section 81, same volume.

Woods' Mayne on Damages, 1st edition, Section 82, says: "If A breaks his contract with B, or inflicts some harm on B, the result may be most hurtful to C. But C cannot in general sue A. Not in the former case, because he was not privy to the contract. Not in the latter case, because, although he may have suffered the damnum, it was B who suffered the injuria."

These authorities and the reason back of them seem to us clearly to show that the appellant in the instant case is not entitled to any recovery because of the things of which she complains, and therefore the Court of Common Pleas was right in sustaining the general demurrer to the petition, and its judgment is affirmed.

In the H. W. Koontz case, No. 1844, it follows that, as to the one cause of action for the loss of services and companionship of the wife and the expenses incurred on her behalf, there can be no recovery if she, herself, is not entitled to recover for the injuries sustained.

As to the other cause of action, it simply seems to us that any damages sustained are too remote and too speculative to sustain any cause of action. The things complained of were the trespassing of a lot of curiosity seekers upon the land of the plaintiff subsequent to this act of Robertson. The damages, if any, sustained as the result of the intrusion of these curiosity seekers, are purely speculative. Moreover, as stated by the trial court in his opinion, it was within the province and power of Koontz to exclude from his

property these curiosity seekers. He had control over his property and he had the right and the power to prevent this intrusion.

In our judgment, the Court of Common Pleas was likewise right in sustaining the demurrer in the H. W. Koontz case, and that judgment is also affirmed.

*Judgments affirmed.*

LEMERT, P. J., and SHERICK, J., concur.