AUDIA et al., Appellees,

v.

ROSSI BROTHERS FUNERAL HOME, INC., Appellant.

[Cite as *Audia v. Rossi Bros. Funeral Home, Inc.* (2000), 140 Ohio App.3d 589.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 98CA181.

Decided Dec. 4, 2000.

*Martin Hume,* for appellees.

*Patrick S. Corrigan,* for appellant.

---

VUKOVICH, Judge.

Defendant-appellant Rossi Brothers Funeral Home, Inc. appeals the decision of the Mahoning County Common Pleas Court which denied its motion for directed verdict and submitted plaintiffs-appellees Sam Beshara and Cynthia Beshara Audia's claim of negligent infliction of emotional distress to the jury. For the following reasons, the judgment of the trial court must be reversed.

## STATEMENT OF FACTS

On December 21, 1995, Sam Beshara arrived at appellant's funeral home for the calling hours of his wife, Connie Beshara, who had died of cancer. Upon approaching his wife's casket, he noticed that another deceased woman was in the casket dressed in his wife's clothing. A relative noticed that Connie Beshara's body was in a casket in a room where different calling hours were occurring. Connie's daughter, Cynthia Beshara Audia, approached the family of the other woman and informed them that the bodies had been switched. To convince that family, Cynthia removed the hat from her mother's head to reveal an identifying scar.

In the meantime, Sam was throwing chairs around the funeral home. When he learned that Connie's body was in another room, he entered that room and attempted to lift her body out of the casket. Thereafter, funeral home employees removed the two caskets from the rooms and placed the bodies in their proper caskets and clothes. Neither family was charged for the cost of the funerals.

On July 10, 1997, Sam and Cynthia filed suit against the funeral home, alleging intentional and negligent infliction of emotional distress; they later dismissed the intentional infliction claim. The funeral home stipulated that its conduct was negligent. The case proceeded to a jury trial in September 1998.. After the close of plaintiffs' evidence and again at the close of all evidence, the funeral home asked for a directed verdict. The funeral home argued that a claim for negligent infliction of emotional distress requires a plaintiff to have been a bystander to an accident or to have been placed in fear of an actual physical peril. They also argued that there was no evidence that Cynthia suffered severe emotional distress and that Sam had preexisting problems that caused distress that would not have been suffered by "a normal person reasonably constituted." The court denied the motion for directed verdict and submitted the case to the jury. The jury returned a verdict in favor of the plaintiffs, awarding $75,000 to each. The funeral home filed timely notice of appeal. (Due to Sam Beshara's bankruptcy case, this case was stayed for a time.)

## STANDARD OF REVIEW

■■ In reviewing a directed verdict motion, the evidence must be construed most strongly in favor of the nonmovant. Civ.R. 50(A)(4). Directed verdict is improper if reasonable minds could come to different conclusions on any determinative issue. *Id.* The court merely considers the law and the sufficiency of the evidence; the court does not weigh the evidence or consider witness credibility. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255–256. Hence, this court reviews a trial court's decision on a directed verdict motion *de novo.*

## ASSIGNMENT OF ERROR

Appellant's sole assignment of error provides:

"The trial court improperly denied the defendant's motion for directed verdict, since there was insufficient evidence to establish the tort of negligent infliction of emotional distress."

Appellant argues that the trial court should have directed a verdict in its favor because there was insufficient evidence on which to submit a claim of negligent infliction of emotional distress to the jury. Appellant points to Supreme Court case law that holds that a plaintiff in a negligent infliction suit must have been a bystander to an accident or have been placed in fear of actual physical injury.

Appellees initially argued that appellant waived any error by failing to renew its motion for directed verdict. However, appellant has since supplemented the record with a portion of the transcript that was inadvertently omitted by the court reporter. This supplementation demonstrates that the motion for directed verdict was renewed at the close of all evidence.

In response to appellant's citation to Supreme Court case·law, appellees point to appellate court case law that implies an exception for cases dealing with dead bodies. In the alternative, appellees briefly contend that they were placed in fear of actual physical injury.

## LAW

 At one time, tort law in Ohio required the existence of physical injury or impact in order for a plaintiff to recover for emotional distress. See *Miller v. Baltimore & Ohio S.W. RR. Co.* (1908), 78 Ohio St. 309, 85 N.E. 499. However, the law then changed to allow recovery for emotional distress that is unaccompanied by a contemporaneous physical injury. See *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666; *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109; *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759. There are two infliction-of-emotional-distress causes of action: intentional infliction and negligent infliction. See *id.*[1]

 In *Schultz*, the Supreme Court allowed recovery for negligent infliction where a piece of glass fell off defendant's truck, smashed onto the windshield of

---

1. The elements of intentional infliction of emotional distress are as follows: intentionally or recklessly causing severe emotional distress through extreme and outrageous conduct. *Yeager*, 6 Ohio St.3d at 374, 6 OBR at 425–426, 453 N.E.2d at 670–671. Both causes of action require that the emotional distress be severe unless it is accompanied by a contemporaneous physical injury. See *Binns v. Fredendall* (1987), 32 Ohio St.3d 244, 513 N.E.2d 278.

plaintiff's vehicle, and caused plaintiff severe emotional distress, albeit no physical injury. In *Paugh,* the Supreme Court allowed recovery for negligent infliction where three different defendants crashed their cars into the plaintiff's house and yard and caused her to fear for the safety of her children. These cases stand for the proposition that recovery for negligent infliction is limited "to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." *High v. Howard* (1992), 64 Ohio St.3d 82, 85–86, 592 N.E.2d 818, 821, overruled on other grounds in *Gallimore v. Children's* · *Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 617 N.E.2d 1052. See, also, *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 40, 665 N.E.2d 1115, 1119–1120 (stating that parents have no cause of action for negligent infliction against person who molested their child as they were not bystanders to an accident, nor did they fear physical consequences to their own persons).

For instance, in *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 652 N.E.2d 664, the Supreme Court denied recovery for negligent infliction where the defendant hospital negligently informed plaintiff that she was HIV-positive. The court followed the holding in *Criswell v. Brentwood Hosp.* (1989), 49 Ohio App.3d 163, 551 N.E.2d 1315. In that case, the Eighth Appellate District denied recovery where the defendant hospital negligently diagnosed a three year old with chlamydia and reported possible sexual abuse to the authorities. The Supreme Court noted how the plaintiffs in *Schultz* and *Paugh* were faced with a fear of actual physical harm and the plaintiffs in *Criswell* and *Heiner* were merely faced with a fear of a nonexistent physical peril. *Heiner,* 73 Ohio St.3d at 86–87, 652 N.E.2d at 669–670. The court specifically stated that "Ohio does not recognize a claim for negligent infliction of severe emotional distress where the distress is caused by the plaintiff's fear of nonexistent physical peril." *Id.* at 87, 652 N.E.2d at 670.

### FEAR OF ACTUAL PHYSICAL PERIL

Appellees suggest in two sentences that Sam and Cynthia were faced with an actual physical peril. Appellees claim that the events at the funeral home could be perceived as a physical threat due to the degree of emotional intensity. However, it is clear that they were not faced with a threat to their physical safety as a result of the funeral home's negligence. Construing the facts in the light most favorable to · appellees, no reasonable mind could find that · they were confronted with an actual physical peril.

### EXCEPTIONS TO THE RULE OF *HEINER*

Appellant argues that because appellees faced no fear of physical harm, the court should have directed a verdict in its favor. Appellees respond that

regardless of whether they faced an actual physical peril, there are exceptions that apply in cases where a corpse is negligently handled. They cite various appellate cases. See, *e.g., Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 514 N.E.2d 430; *Brownlee v. Pratt* (1946), 77 Ohio App. 533, 33 O.O. 356, 68 N.E.2d 798.

In *Carney,* the Eighth Appellate District characterized mishandling of a dead body as a subspecies of the tort of infliction of emotional distress, without actually specifying negligent or intentional. In that case, the cemetery supervisor instructed workers to keep digging after they hit an old wooden vault. The vault and the remains that were falling out of it were then thrown in a heap behind a mausoleum. *Carney* seems to recognize a cause of action for negligent handling of a dead body; however, the acts complained of were intentional and reckless. Moreover, the holding in *Brownlee* dealt with intentional or wilful acts toward a dead body rather than merely negligent acts. See, also, *Taras v. Lane–Williams Funeral Home* (Feb. 17, 1982), Mahoning App. No. 81 CA 110, unreported, 1982 WL 3635 (stating that emotional distress caused by a funeral's home act of closing a casket due to an odor could only be compensable if it were intentional or reckless and was not compensable if negligently done in good faith).

A cause of action or an exception to the rule of negligent infliction for negligent handling of a dead body has never been expressly set forth by the legislature, the Ohio Supreme Court, or this appellate district. Yet the Supreme Court has mentioned *Carney* and *Brownlee* in its various negligent infliction decisions. See *Heiner,* 73 Ohio St.3d at 89, 652 N.E.2d at 670, fn. 3; *Paugh,* 6 Ohio St.3d at 77, 6 OBR at 118, 451 N.E.2d 759; *Schultz,* 4 Ohio St.3d at 135–136, 4 OBR at 380, 447 N.E.2d 109. In support of its holding in *Heiner,* the Supreme Court noted that appellate courts across Ohio interpret *Paugh* and *Schultz* to mean the plaintiff can recover only for negligent infliction where he was a bystander to a dangerous accident or appreciated an actual physical peril. *Heiner,* 73 Ohio St.3d at 86–87, 652 N.E.2d at 669–670. After citing the cases that have so held, the court provided a footnote. *Id.* at 87, 652 N.E.2d at 669–670. This footnote states:

"We note, in passing, that there does exist some case law in this state recognizing certain exceptions to the actual-peril requirement. See, *e.g., Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 33–34, 514 N.E.2d 430, 432–433 (permitting recovery for negligent infliction of emotional distress where defendants were responsible for desecration of a grave). However, none of the exceptions applies to the case at bar." *Id.* at 89, 652 N.E.2d at 670, fn. 3.

The question becomes what the Supreme Court meant by this footnote. It could acknowledge that an exception exists for negligent handling of a dead body. In the alternative, it could just be a notation that although many appellate courts

have ruled properly that negligent infliction requires a bystander to an accident or a fear of actual physical peril, some courts have unilaterally created a dead-body exception, even though it appears that those courts were actually dealing with intentional infliction.

There is no Supreme Court precedent on a dead-body exception, as it has never directly addressed a case dealing with such an issue. Conversely, there is explicit Supreme Court precedent that requires a plaintiff in a negligent infliction suit to have been a bystander to an accident or to have been placed in fear of an actual physical peril. It does not appear that an appellate court can create a cause of action or an exception to the holdings of the Supreme Court. Hence, this court shall not expand recovery in the area of negligent infliction of emotional distress without an express directive from the Supreme Court.

Furthermore, some courts consider negligence regarding a dead body to be a special circumstance that requires an exception. However, the Supreme Court seems disinclined to create exceptions for the tort of negligent infliction of emotional distress. For instance, the court stated that it is not persuaded to deviate from governing law and create a subspecies of negligent infliction that applies only in the context of a patient-physician relationship. *Heiner*, 73 Ohio St.3d at 88, 652 N.E.2d at 670–671 (denying recovery where hospital negligently diagnosed plaintiff as HIV-positive). Also, if parents' severe distress over a hospital's negligent diagnosis of their three-year-old daughter with chlamydia and the hospital's subsequent reporting of sexual abuse to authorities is not a special circumstance deserving of an exception to the general rules for negligent infliction, then we cannot say that a negligent switching of bodies which is remedied one hour after discovery is a special circumstance until the Supreme Court states otherwise. See *id.*, favorably citing *Criswell*, 49 Ohio App.3d at 163, 551 N.E.2d at 1316. Acceptance of jurisdiction in this case will give the Supreme Court the opportunity to address the issue in a case on point, thus clearing up the law of the state.

For the foregoing reasons, the trial court should have granted directed verdict for appellant. Accordingly, the trial court's judgment denying directed verdict is reversed, the jury verdict is vacated, and judgment is hereby entered in favor of appellant as a matter of law.

*Judgment reversed.*

WAITE, J., concurs.

Cox, P.J., dissents.